IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BUIE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MARQUELL M. BUIE, APPELLANT.

Filed February 3, 2026.    No. A-25-045.

Appeal from the District Court for Douglas County: DEREK R. VAUGHN, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Bekah S. Keller for appellant.

Michael T. Hilgers, Attorney General, and Austin N. Relph for appellee.

MOORE, BISHOP, and WELCH, Judges.

MOORE, Judge.

## I. INTRODUCTION

Marquell M. Buie appeals his conviction of possession of a deadly weapon by a prohibited person with a habitual criminal enhancement entered following a jury trial in the district court for Douglas County. On appeal, he assigns error to the denial of his motion to suppress, his request for a continuance, and his request to waive his right to counsel, as well the sufficiency of the evidence to support his conviction and the sentence imposed by the court. He also assigns that he received ineffective assistance of trial counsel. Finding no error, we affirm.

## II. STATEMENT OF FACTS

On July 6, 2023, Buie was charged by information with one count of possession of a deadly weapon, specifically a firearm, by a prohibited person in violation of Neb. Rev. Stat. § 28-1206 (Cum. Supp. 2022), a Class ID felony.

- 1 -

## 1. PRETRIAL PROCEEDINGS

On January 23, 2024, Buie (through his appointed counsel) filed a motion to suppress any evidence gained by the State as a result of a stop and detention of Buie by the Omaha Police Department on May 26, 2023. The motion alleged that all evidence and statements were obtained in violation of Buie's constitutional rights.

A hearing on Buie's motion to suppress was held on February 6, 2024. Nicolas Molek, an officer with the Omaha Police Department's Criminal Investigations Bureau, testified that on May 26, 2023, he was on duty with Detectives Matthew Ajuoga and Kyle Graber in a single marked police cruiser. The group was patrolling an area of northeast Omaha, Nebraska, which Molek described as a high crime area.

While patrolling, the officers noticed a vehicle parked in the parking lot of a grocery store. Molek testified that the officers observed that the parked vehicle had "multiple open doors and a lot of short-term foot traffic to and from the vehicle." The vehicle's license plates were checked and revealed that Buie was the registered owner.

The officers drove past the vehicle twice before parking near the grocery store's parking lot. The officers continued to observe the parking lot from their parked cruiser. Molek noted that the vehicle was not parked very close to the grocery store, and that it did not appear as though people were going to and from the store. Rather, people were "just walking to and from the vehicle[,] kind of loitering in that area." While parked, officers observed an individual get out of the driver's seat of the vehicle. The individual, later identified as Buie, then walked behind a nearby product delivery truck and knelt down by one of the rear tires. At that point, the officers decided to enter the parking lot and to further investigate the ongoing activity. The officers entered the parking lot without activating the cruiser's lights or sirens. Footage from the grocery store's surveillance system demonstrates that the officers parked behind Buie's vehicle, but that neither the entrance to the parking lot, nor the front of Buie's vehicle, were blocked. Once in the parking lot the officers got out of their patrol car and approached, with Molek and Graber making contact with Buie and Ajuoga proceeding to the vehicle.

As Molek and Graber walked to the side of the delivery truck, they saw Buie crouched down and lighting a marijuana cigarette. Molek and Graber then detained Buie and placed him in handcuffs. Two marijuana cigarettes were later recovered from the wheel well of the delivery truck where Buie had been crouching. After Buie was detained, Graber began walking toward the vehicle to assist Ajuoga. At that point, Buie attempted to break free and run from Molek, who then took Buie to the ground.

Meanwhile, as Ajuoga approached Buie's vehicle, he "immediately smelled the odor of marijuana emanating from the vehicle." There were three other individuals inside the vehicle who were detained, though ultimately released at the end of the encounter. Footage from Ajuoga's body worn camera reflects that all three of the passengers were teenagers. Two of the passengers denied having any weapons in response to questioning by Ajuoga and Graber.

After the passengers had been identified, Ajuoga began his probable cause search of the vehicle. Ajuoga found a small bag of approximately 3 grams of marijuana inside the center console along with a cup ashtray, which contained a partially smoked marijuana cigarette. Ajuoga also found a handgun underneath the driver's seat. The firearm can be seen underneath the vehicle's

driver's seat, positioned in front of the seat's hardware, in footage from Ajuoga's body worn camera. After locating the firearm, Ajuoga called for his sergeant to come to the parking lot, as well as the forensic unit to come and collect it. The firearm was identified as a Smith and Wesson MMP 380 shield handgun. Ajuoga did not specifically ask if the firearm belonged to any of the passengers, and none volunteered that they were the firearm's owner.

Graber conducted further checks and discovered that Buie was a prohibited person from "obtaining" a firearm due to previous felony convictions. Buie was then arrested and booked into jail.

Footage from Molek's, Ajuoga's, and Graber's body worn cameras as well as footage from the grocery store's surveillance system were also entered into evidence.

On February 9, 2024, the district court entered an order denying Buie's motion to suppress. The court concluded that Buie's constitutional rights had not been violated because the initial contact between officers and Buie was not a seizure. During the officers' initial encounter with Buie, they observed him to be in possession of marijuana, and Buie was detained for this possession. Further, the subsequent search of Buie's vehicle was justified by probable cause as the odor of marijuana was emanating from his vehicle. A search of the vehicle produced a handgun found under the driver's seat. Based on the totality of the circumstances, the court found that the officers had probable cause to arrest Buie for possession of a deadly weapon by a prohibited person.

At a pretrial hearing held on February 29, 2024, Buie informed the district court that he wanted to retain his own attorney. Buie's appointed counsel was permitted to withdraw.

Buie appeared with his new attorney at another pretrial hearing held on September 26, 2024. At that hearing, the State noted on the record that Buie had rejected its plea offer; if Buie pled to the information as filed, the State would not seek a habitual criminal enhancement, for which Buie was eligible. The district court explained to Buie the consequences of a habitual criminal enhancement, as well as the mandatory and maximum sentences he faced if he proceeded to trial. Buie's attorney affirmed that Buie wanted to exercise his right to a jury trial. The court granted the State's motion to file an amended information, which included a habitual criminal allegation.

The morning that trial was scheduled to begin, Buie himself made an oral request to continue the trial. He argued that his attorney was trying to coerce him into taking a plea deal and was telling Buie that he was going to lose, and that the attorney would not call certain witnesses to testify. Buie stated that he did not want to "start a race with someone that's telling me I'm going to lose already."

The district court asked Buie's attorney for a response. He stated:

> You know obviously I don't want to get into confidential communications, but generally speaking, it's obviously counsel's duty and obligation to provide someone with all the facts to inform their decision. And you know, I feel as though I've done that. It's obviously Mr. Buie's right to go to trial which nobody here is obviously contesting. But as far as the defense strategy and stuff like that you know, I'm not obligated to do something that I don't feel comfortable doing. And I don't really know what to . . . say beyond that.

> I've tried to do the best I could to put Mr. Buie in the best situation for himself. He obviously disagrees with my advice, but we're . . . nonetheless here.

Buie's attorney also indicated that he was ready to proceed with trial.

The district court heard arguments by both the State and Buie before denying Buie's request for a continuance. The court noted that Buie's motion was made moments before his trial was set to begin, a private court reporter and jurors had arrived for the trial, Buie's case had been on file since July 2023, and that granting Buie's motion would affect other defendants awaiting their trial date.

Buie then moved to waive his right to counsel and to represent himself at trial. The district court engaged Buie in a colloquy on the issue. The court asked Buie if he could write, read, and understand English, which Buie affirmed. Buie denied that he suffered from any mental or emotional disability or had consumed any alcohol or drugs within the past 24 hours. Buie stated that he had graduated from high school but did not have any legal education, nor any experience with the court system. Buie affirmed that he understood if he represented himself, he would be held to the same standards as a defendant who is represented by counsel.

The district court asked Buie if he understood that he was expected to comply with the rules of criminal procedure, the rules of evidence, and any applicable Supreme Court and District Court rules, which Buie affirmed. Buie affirmed that he understood he would be responsible for selecting a jury, making opening and closing statements, cross-examining the State's witnesses, adducing his own evidence, and asserting all appropriate motions throughout trial.

The district court asked Buie if he still wished to waive his right to counsel, which Buie affirmed. Buie also affirmed that it was in his best interests to waive his right to counsel, stating, "I will not have a fair trial if I take someone who's not on my team." Buie denied that anyone had made any promises that caused him to waive his right to counsel. Buie affirmed that he was waiving his right to counsel voluntarily and free of any force or threats from anyone. The court repeatedly asked Buie if he was "sure this is what you want to do?" The court again explained the mandatory minimum sentences Buie was facing. Buie affirmed "Yes. That's my choice, Your Honor."

The district court granted Buie's motion and appointed Buie's attorney as standby counsel on its own motion, as to avoid unnecessary delay. The court inquired whether Buie wanted his attorney to handle jury selection and opening statements, to which Buie agreed. The court then asked if Buie and his attorney could have a discussion as to how Buie wanted to approach cross-examination and the questioning of witnesses. Buie again agreed.

## 2. TRIAL

Trial was held over the course of 3 days in October and November 2024.

Following jury selection, the district court inquired into whether Buie and his attorney had further discussions regarding the attorney's representation. Buie stated that they had; "Basically, like I'm in control, but he's here to assist." Buie agreed that his attorney would represent him during the State's case in chief and that a further discussion would take place when it came time for Buie's presentation of his defense. Buie affirmed that the court's understanding of the arrangement was correct, that this was the arrangement he desired, and that no one had forced him to agree to the arrangement. The court described the arrangement as "a unique hybrid" representation.

- 4 -

Buie's attorney then indicated that he wished to make some motions prior to opening statements. First, Buie's attorney indicated that Buie had "filed a motion to suppress prior to my involvement on this case, and I don't want him to obviously waive that right or on appeal." Second, Buie's attorney objected under Neb. Rev. Stat. § 27-403 (Reissue 2016) and Neb. Rev. Stat. § 27-404 (Reissue 2016) to evidence of a later, separate incident between Buie and various officers attempting to collect Buie's DNA pursuant to a court-ordered buccal swab, where Buie had allegedly spit on Ajuoga. The State intended to offer the evidence of the incident to show consciousness of guilt. The district court overruled Buie's attorney's objections regarding the buccal swab collection, finding that "the process as to how they got the buccal swab is very relevant." Additionally, the parties, including Buie himself, indicated that they had agreed to enter a stipulation that on the relevant date Buie was a prohibited person.

During the State's presentation of its case, it called Ajuoga and Graber, who testified consistently with the testimony offered at the suppression hearing. Graber additionally testified that after the firearm was collected by the Forensic Investigation Unit, the firearm's serial number was run. The serial number indicated that the firearm was reported stolen in February 2023. Footage from Ajuoga's and Graber's body worn cameras, as well as footage from the grocery store's surveillance system, were again entered into evidence.

Ajuoga also testified regarding an attempt to collect a court-ordered buccal swab from Buie. Following the events of May 26, 2023, Ajuoga applied for a "buccal order" to compare a sample of Buie's DNA with the DNA found on the firearm. The buccal order was granted and Ajuoga attempted to serve it on Buie in August, as Buie was leaving his workplace for the day. Ajuoga testified that Buie became "extremely agitated" by the presence of police at his workplace. Ajuoga noted that Buie was "already detained" at the time collection was attempted. As Ajuoga attempted to collect a buccal swab from Buie, Buie spit in Ajuoga's face and on his uniform vest. Footage of Ajuoga's body worn camera depicting the incident was entered into evidence and published without objection.

Ajuoga testified that a second attempt to collect DNA from Buie was successful and the sample was sealed in an envelope and booked into evidence. Ajuoga testified that he later transported it for DNA comparison testing.

Buie's attorney proceeded to cross-examine Ajuoga regarding his attempt to collect Buie's buccal swab in August 2023. Buie's attorney asked Ajuoga whether Buie had been detained at the time because a probable cause search had been conducted on his vehicle based on the observation of the odor of marijuana, to which Ajuoga affirmed. Ajuoga also affirmed that officers had parked behind Buie in his workplace parking lot and that Buie was placed in handcuffs at the time of the collection attempt. Ajuoga denied that there had been any previous attempts to collect a buccal swab from Buie. Buie's attorney asked Ajuoga, "Why was it so urgent that you I guess, immediately went to his place of work to, I guess, get . . . a buccal swab from him? [D]id you consider that that could possibly be . . . humiliating or lead to his termination?" Ajuoga disagreed that Buie would have been humiliated, noting that officers contacted Buie after he had left his place of work for the day, rather than contacting him during his workday.

Joseph Choquette, a DNA analyst at the University of Nebraska Medical Center, testified that he compared the DNA sample collected from the firearm to the DNA sample belonging to Buie. He determined that Buie could not be excluded as a contributor of the DNA collected from

- 5 -

the firearm. Choquette's DNA report and its appendix were entered into evidence without objection. Choquette testified that the DNA sample collected from the firearm contained a mixture of three individuals. Choquette stated that it is possible for an individual's DNA to be on the surface of an item that the individual never personally touched. However, his analysis concluded that approximately 67 percent of the DNA from the firearm came from Buie.

At no point during the State's presentation of evidence did Buie's attorney specifically renew Buie's motion to suppress or object to the underlying evidence the motion had challenged. Following the State's case in chief, Buie's attorney made a motion for directed verdict. The district court denied the motion for directed verdict. The court then asked Buie if his attorney was "handling the next portion of your defense?" Buie responded, "Yes, Your Honor." The court again asked, "He's handling it at your discretion and with your approval. Is that correct?" Buie responded, "Yes, Your Honor."

Buie testified that at the end of his workday on May 26, 2023, he had gone to pick up two of his cousins and two of their friends. Buie then drove them to a barber shop connected to the grocery store. One of Buie's cousins waited in the parking lot to get his haircut while Buie and the three other teenagers waited in Buie's vehicle. Buie then received a phone call from his girlfriend and exited his vehicle to answer the call, taking with him a small marijuana cigarette. After a short phone call with his girlfriend, he attempted to light the marijuana cigarette and went behind the delivery truck to shield himself from the wind.

Before he could light the marijuana cigarette, Buie heard footsteps and saw Molek and Graber approaching him. Buie testified that Molek grabbed him, placed him in handcuffs, and when Molek tried to manipulate Buie's arm, it caused Buie pain. Buie testified that he then tripped, and Molek got "a little aggressive." When Buie stopped walking to ask a question, Molek "slammed" Buie on his face. Buie denied that he had attempted to flee or run away from Molek.

Buie denied placing the firearm in his vehicle. Buie was not aware of the firearm in his vehicle, or that any of his passengers had a firearm. Buie testified that he does not allow firearms in his vehicle.

Regarding the attempted buccal swab collection in August 2023, Buie testified that he had left work with a coworker who Buie was going to give a ride home. Buie testified that after he left his workplace and got into his car, he saw an officer next to his car who told him to get out of his vehicle. Buie testified that he and his coworker were placed in handcuffs. Buie testified that he was embarrassed and humiliated in front of his employers at his workplace.

Buie was initially hesitant to comply with the buccal swab because he had gauze in his mouth due to dental injuries he suffered during his detainment on May 26. Buie testified that he would not intentionally spit on a police officer, but rather he spat at the swab that Ajuoga held in front of his face. When Buie spat on the swab, some of his spit landed on Ajuoga's body camera.

Robert McTizic-Brown testified that he was Buie's cousin and one of the passengers in his vehicle on May 26. McTizic-Brown was sitting in the backseat of Buie's vehicle, directly behind the driver's seat. McTizic-Brown testified that he brought the firearm into Buie's vehicle without Buie's knowledge. McTizic-Brown tried to hide the firearm under a hoodie he found in Buie's vehicle. After seeing the police cruiser drive past multiple times, McTizic-Brown placed the firearm under the driver's seat while the hoodie was still over the firearm and then kicked it further under the seat.

McTizic-Brown testified that he did not tell the officers that the firearm was his because he was scared after seeing Buie taken to the ground. McTizic-Brown testified that he received the firearm at a party the day prior, but did not know the brand or model of the handgun, or how many bullets were inside its chamber. McTizic-Brown acknowledged that he had not claimed ownership of the firearm prior to testifying. McTizic-Brown had never been asked to provide a DNA sample in this case.

In the State's closing argument, it referenced both Buie's attempt to run from Molek after his detainment and Buie's spitting on Ajuoga while officers attempted to collect a buccal swab as evidence of Buie's guilt. The State also argued that Buie was in possession of a "stolen firearm," because Buie is a felon and therefore was not able to otherwise acquire a firearm.

During the defense's closing argument, Buie's attorney noted that though there were three individual's DNA on the firearm, only Buie's DNA had been swabbed and tested for comparison. Therefore, two of the other contributors to the DNA profile remained unidentified and either of those contributors could have been responsible for transferring Buie's DNA to the firearm via an indirect transfer. Buie's attorney argued that the State failed to produce evidence ruling out that another passenger in the vehicle placed the firearm under the driver's seat, resulting in reasonable doubt as to Buie's culpability.

During the State's rebuttal, it reiterated that Buie's DNA comprised 67 percent of the DNA located on the firearm. The State also argued that "the defense wants you to believe that that 67 percent . . . came from putting a sweatshirt . . . on the firearm. Does that make sense?"

### 3. VERDICT AND SENTENCING

The jury found Buie guilty of possession of a deadly weapon by a prohibited person. The district court accepted the jury's verdict and ordered the preparation of a presentence investigation report (PSR). At a subsequent sentencing hearing, the State offered exhibits in support of enhancement, including two prior felony convictions and a certified "pen pack" dated August 29, 2024, in which the Nebraska Department of Correctional Services stated that Buie has been twice convicted of a felony on separate occasions. The court received these exhibits without objection and determined that the State had met its burden for enhancement. The court found that Buie was a habitual criminal under Neb. Rev. Stat. § 29-2221 (Cum. Supp. 2024) and sentenced him to a term of 15 to 25 years' imprisonment.

Buie appeals.

### III. ASSIGNMENTS OF ERROR

Buie assigns, reordered, that the district court erred by (1) denying his motion to suppress; (2) denying Buie's request for a continuance of trial; (3) failing to properly analyze Buie's request to waive his right to counsel; (4) finding sufficient evidence to support his conviction; and (5) imposing an excessive sentence. Buie also assigns (6) that his trial counsel was ineffective in failing to renew Buie's motion to suppress the stop and search of Buie; failing to object to numerous evidence related to assault on an officer with bodily fluid; failing to object to cumulative evidence and publishing of body worn camera from the collection of a buccal swab from Buie; failing to object to numerous marijuana references and volunteered evidence contrary to Buie's interests; failing to object to numerous stolen firearm references and failing to object to the State's

argument in closing related to the status of the firearm as stolen; eliciting testimony on cross-examination that Ajuoga searched Buie's vehicle when administering a buccal swab; failing to adequately argue the issue of transferred DNA to the firearm found in Buie's vehicle; and the cumulative effect of trial counsel's errors was deficient performance that deprived Buie of his right to adequate counsel.

## IV. ANALYSIS

### 1. MOTION TO SUPPRESS

Buie first assigns that the district court erred when it denied his motion to suppress the stop and seizure of his person and vehicle on May 26, 2023. Buie argues that the district court erred in finding that the initial encounter amounted only to a tier-one consensual encounter where the evidence adduced showed the detectives intended to conduct a stop and seizure of Buie and his vehicle and the evidence failed to show specific articulable facts sufficient to support such a tier-two detention.

Where there has been a pretrial ruling regarding the admissibility of evidence, a party must make a timely and specific objection to the evidence when it is offered at trial in order to preserve any error for appellate review. *State v. Lowman*, 308 Neb. 482, 954 N.W.2d 905 (2021). The failure to object to evidence at trial, even though the evidence was the subject of a previous motion to suppress, waives the objection, and a party will not be heard to complain of the alleged error on appeal. *Id.*

Though Buie's attorney referenced Buie's motion to suppress in his statements at the start of trial, Buie did not renew his motion to suppress or object to the relevant evidence when offered by the State. Accordingly, Buie failed to preserve the suppression issue with regard to the evidence gained as result of Buie's stop and detention on May 26. This assignment of error fails.

However, we will more thoroughly analyze the district court's denial of his motion to suppress in connection with Buie's claim below that his trial counsel was ineffective in failing to renew the motion to suppress.

### 2. REQUEST FOR CONTINUANCE

Buie next assigns that the district court erred in denying his request for a continuance of his trial. Buie argues that he presented sufficient cause for a continuance, as he explained to the court that "the night before trial defense counsel attempted to coerce Buie into accepting a plea deal, refused to aid in Buie's defense at trial, and insisting that Buie would be convicted at trial." Brief for appellant at 50. Buie contends that the district court ignored the potential prejudice to Buie and abused its discretion in ignoring potential ethical concerns over his trial counsel's representation. He further asserts that there was no prejudice to the State or the court in continuing the trial.

A decision whether to grant a continuance in a criminal case is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Turner*, 315 Neb. 661, 998 N.W.2d 783 (2024). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Buie's oral request for a continuance was made at the start of his jury trial. He alleged that his attorney was attempting to coerce him into entering a plea. The district court also heard from Buie's trial counsel, who refuted Buie's allegations, stating that he and Buie disagreed in terms of trial strategy, but that he had done his best to fulfill his ethical obligation to provide Buie with sufficient facts to allow Buie to make an informed decision regarding his right to a jury trial. Buie's trial counsel noted that "I've tried to do the best I could to put Mr. Buie in the best situation for himself. He obviously disagrees with my advice." Trial counsel indicated that he was prepared to proceed with the trial.

Although Buie and trial counsel had an apparent breakdown in their relationship, the record supports that there was difference in opinion regarding trial strategy, as opposed to coercion by trial counsel. In denying the request, the district court noted the length of time the case had been pending and set for trial, and further emphasized many practical considerations, including the effect on the jurors and court personnel who were already assembled for the first day of Buie's trial, as well as other defendants who were awaiting their own trial date.

Upon our review of the record, we cannot say that the district court abused its discretion when denying Buie's request for a continuance. This assignment of error fails.

### 3. REQUEST TO WAIVE RIGHT TO COUNSEL

Buie assigns that the district court committed clear error when it failed to conduct the proper analysis to Buie's request to waive his right to counsel. Buie asserts because the district court failed to make a sufficient record on this issue, "it is impossible to know whether Buie was competent to stand trial or that his waiver was knowingly, intelligently, and voluntarily done." Brief for appellant at 43.

The question of competency to represent oneself at trial is one of fact to be determined by the court, and the means employed in resolving the question are discretionary with the court. The trial court's determination of competency will not be disturbed unless there is insufficient evidence to support the finding. *State v. Jenkins*, 303 Neb. 676, 931 N.W.2d 851 (2019). In determining whether a defendant's waiver of counsel was voluntary, knowing, and intelligent, an appellate court applies a "clearly erroneous" standard of review. *Id*.

A criminal defendant has a constitutional right to waive the assistance of counsel and conduct his or her own defense under the Sixth Amendment and Neb. Const. art. I, § 11. *State v. Jenkins, supra*. The two-part inquiry into whether a court should accept a defendant's waiver of counsel is, first, a determination that the defendant is competent to waive counsel and, second, a determination that the waiver is knowing, intelligent, and voluntary. See *id*.

By granting Buie's motion to waive his right to counsel and represent himself, the district court impliedly found that Buie was both competent to waive the right and that Buie's waiver was knowing, voluntary, and intelligent. Additionally, such findings were supported by the record. The district court conducted an extensive colloquy with Buie to ensure that he understood the choice he was making, as well as its repercussions, and Buie's answers throughout the colloquy were coherent. Further, there were no indications that Buie did not understand what he was doing. Buie did not exhibit any confusion, and he was clear in his wishes. Buie explicitly stated to the district court that his waiving his right to counsel was his choice.

Buie also argues that the district court committed clear error by overstepping its neutral judicial role and insisting Buie reinvoke his right to counsel. This argument is likewise refuted by the record. At no point did the district court insist on Buie following any particular course of action. Rather, the district court went to great lengths to ensure that Buie understood the repercussions of his desire to represent himself. The district court inquired into Buie's arrangement with his trial counsel both after jury selection and before the defense's presentation of evidence. The district court continually questioned whether Buie agreed with the scope of his representation. It is clear that the decisions on how to proceed at trial were done with Buie's explicit consent and approval.

The Nebraska Supreme Court has held in the context of a criminal case that a defendant does not have a right to "hybrid representation" in which the pro se defendant appears as cocounsel with his or her appointed attorney. See *State v. Wilson*, 252 Neb. 637, 652, 564 N.W.2d 241, 252 (1997), *disapproved on other grounds, State v. Hagens*, 320 Neb. 65, 26 N.W.3d 174 (2025). Rather, it is within a trial court's discretion to allow this type of representation. *Id*. To allow Buie's hybrid representation was within the district court's discretion, and we find no error. This claim fails.

### 4. SUFFICIENCY OF EVIDENCE

Buie assigns that the district court erred in finding there was sufficient evidence to warrant a conviction beyond a reasonable doubt because the evidence failed to establish possession of a deadly weapon by a prohibited person. Buie asserts that the State's evidence demonstrated that two other DNA profiles existed on the firearm, which were not investigated by police. Further, Buie argues that Choquette's testimony regarding the ability to transfer DNA without direct skin contact with items and McTizic-Brown's testimony supported "a possibility of transfer DNA as an explanation for Buie's DNA being present in the sample from the firearm, without Buie ever actually or constructively possessing the firearm." Brief for appellant at 53.

In an appeal of a criminal conviction, an appellate court reviews the evidence in a light most favorable to the prosecution. *State v. Hagens*, 320 Neb. 65, 26 N.W.3d 174 (2025). In reviewing a criminal conviction for sufficiency of the evidence, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

Buie was convicted of one count of possession of a deadly weapon by a prohibited person under § 28-1206, which provides, in relevant part:

(1) A person commits the offense of possession of a deadly weapon by a prohibited person if he or she:

(a) Possesses a firearm, a knife, or brass or iron knuckles and he or she:

(i) Has previously been convicted of a felony. . . .

The parties stipulated that on May 26, 2023, Buie was a prohibited person because he had previously been convicted of a felony. Therefore, the only element at issue was whether Buie possessed a deadly weapon, namely a firearm.

Evidence at trial established that Buie was the registered owner of the vehicle and had been sitting in the driver's seat. The firearm was found under the vehicle's driver's seat, in front of the seat's hardware. Buie's DNA was the main contributor to the DNA mixture found on the firearm, despite his testimony at trial he was unaware of the firearm's presence in his vehicle. Though at trial McTizic-Brown claimed both ownership of the firearm and that he was the one who placed it under the driver's seat of Buie's vehicle, at the time of the vehicle's search, none of the other passengers claimed ownership of the firearm. Two of the vehicle's passengers, including McTizic-Brown, specifically denied possessing any weapons.

The jury clearly made an implicit credibility finding when it found Buie guilty of possession of a deadly weapon by a prohibited person. In reviewing a conviction for sufficiency of the evidence, we do not pass on the credibility of witnesses and instead we recognize that it is a matter for the fact finder. See *State v. Hagens, supra*.

Viewing the evidence in this case in the light most favorable to the prosecution, we conclude that the jury could have found that Buie's possession of a deadly weapon had been proved beyond a reasonable doubt. This assignment of error fails.

## 5. EXCESSIVE SENTENCE

Buie assigns that the district court abused its discretion when it imposed an excessive sentence.

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Rivera-Meister*, 318 Neb. 164, 14 N.W.3d 1 (2024). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. See *State v. King*, 316 Neb. 991, 7 N.W.3d 884 (2024). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*. Generally, it is within a trial court's discretion to direct that sentences imposed for separate crimes be served either concurrently or consecutively. *State v. Ezell*, 314 Neb. 825, 993 N.W.2d 449 (2023).

Buie was sentenced to 15 to 25 years' imprisonment for possession of a deadly weapon by a prohibited person, a Class ID felony, with a habitual criminal enhancement. A Class ID felony is punishable by a mandatory minimum of 3 years and a maximum of 50 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2024). A habitual criminal enhancement carries a maximum of 60 years' imprisonment and a mandatory minimum of 10 years' imprisonment. See § 29-2221. Thus, Buie's sentence is within the statutory limits.

Nevertheless, Buie argues that the district court failed to give adequate weight to essential mitigating factors, such as Buie's age, maturity, social background, and the motivation underlying his offense.

The PSR shows that Buie was 29 years old at the time the report was prepared, was single with three dependents, and was a high school graduate. Buie's criminal record includes a 2018 conviction for felony child abuse and neglect, and a 2020 conviction for felony attempted possession of a deadly weapon (firearm) by a prohibited person. Buie had also been convicted of obstructing an officer in 2013 and 2019. Buie was arrested for felony offenses involving firearms in 2013 and 2015, though those charges were ultimately dismissed. The PSR reflects that Buie had subsequently been convicted of assault on an officer with bodily fluid for spitting on Ajuoga.

Buie refused to participate in a presentence interview for the report; however, PSRs which had been completed on Buie in 2018 and 2020 were attached to the PSR in this case. On the Level of Service/Case Management Inventory, Buie scored in the overall very high risk to reoffend category in 2018 and the overall high risk to reoffend category in 2020.

At sentencing, the district court indicated that it considered the relevant statutory factors and had reviewed the PSR, which contained the mitigating factors argued by Buie. The district court noted that Buie was not eligible for probation and due to the habitual criminal enhancement, Buie's sentence must include the mandatory minimum of 10 years, as required by statute.

We find no abuse of discretion by the district court in the sentence imposed.

### 6. INEFFECTIVE ASSISTANCE OF COUNSEL

Through different counsel, Buie contends that his trial counsel provided ineffective assistance in eight ways.

### (a) Legal Framework

Whether a claim of ineffective assistance of counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Npimnee*, 316 Neb. 1, 2 N.W.3d 620 (2024). In reviewing a claim of ineffective assistance of counsel on direct appeal, an appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id*.

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. German*, 316 Neb. 841, 7 N.W.3d 206 (2024). Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *State v. German, supra*. When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id*.

Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.* The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Miller*, 315 Neb. 951, 2 N.W.3d 345 (2024). To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. To show prejudice from counsel's deficient performance, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*.

(b) Failing to Renew Motion to Suppress

Buie argues that trial counsel was ineffective for failing to renew Buie's motion to suppress, as the district court erred when it found that the initial encounter between police and Buie amounted only to a tier-one encounter.

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Lowman, supra*. The first tier of police-citizen encounters involves no restraint of the liberty of the citizen involved, but, rather, the voluntary cooperation of the citizen is elicited through noncoercive questioning. This type of contact does not rise to the level of a seizure and therefore is outside the realm of Fourth Amendment protection. *Id*.

Our caselaw instructs that a police officer merely questioning an individual in a public place is not a seizure subject to Fourth Amendment protections, so long as the questioning is carried on without interrupting or restraining the person's movement. See *State v. Botts*, 299 Neb. 806, 910 N.W.2d 779 (2018). At the suppression hearing, Molek testified that officers decided to approach Buie's vehicle after observing suspicious foot traffic going to and from the vehicle for some time. Their purpose was to investigate the ongoing activity in the grocery store's parking lot. Footage from the grocery store's surveillance system demonstrates that though officers parked behind Buie's vehicle, the front of the vehicle was not blocked, nor was the public entrance to the

parking lot. At the time of the officers' approach, Buie was standing outside of his car. Two officers approached Buie on foot for questioning in the grocery store's parking lot, a public place. Thus, the initial contact between officers and Buie was not a seizure and therefore is outside the realm of Fourth Amendment protection.

Further, upon the initial contact with Buie, the officers observed Buie trying to light a marijuana cigarette and smelled the odor of marijuana emanating from his vehicle, thus providing probable cause to search the vehicle. The Nebraska Supreme Court has held that the odor of marijuana, standing alone, may furnish probable cause to support a warrantless search of a vehicle. See *State v. Seckinger*, 301 Neb. 963, 920 N.W.2d 842 (2018).

We agree with the findings of the district court in its denial of Buie's motion to suppress. Because the district court properly denied Buie's motion to suppress, Buie suffered no prejudice from trial counsel's failure to renew it. This claim fails.

### (c) Failing to Object

#### (i) Evidence Related to Assault by Bodily Fluid

Buie argues that the State's introduction of "bad act evidence that Buie spat upon Ajuoga when Ajuoga was obtaining a buccal swab from Buie was inflammatory, irrelevant and prejudicial." Brief for appellant at 60. Buie asserts that the evidence was admitted in violation of rule 404(2). Though Buie's attorney objected to the evidence of Buie's spitting on Ajuoga prior to trial, Buie contends that once the objection was overruled, the attorney had a continuing duty to minimize the damage through renewed objections, motions to strike, and a request for a limiting instruction.

Neb. Rev. Stat. § 27-404(2) (Reissue 2016) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The Nebraska Supreme Court has held that consciousness of guilt evidence is subject to rule 404(2). See *State v. Burries*, 297 Neb. 367, 900 N.W.2d 483 (2017). As a result, evidence of Buie spitting on Ajuoga was subject to the same procedural requirements as other evidence offered under rule 404(2). When requested, the trial court must instruct the jury on the specific purpose or purposes for which it is admitting the extrinsic acts evidence under rule 404(2), to focus the jurors' attention on that purpose and ensure that it does not consider it for an improper purpose. *State v. Burries, supra*.

Here, trial counsel objected to the evidence of Buie's spitting on Ajuoga before trial began, but did not make any additional objections when the evidence was offered at trial, nor did trial counsel request the district court provide a limiting instruction to the jurors. Even so, Buie cannot show that but for the evidence of him spitting on Ajuoga, the result of the proceeding would have been different.

As noted above, the only element at issue was whether Buie possessed the firearm. The jury found Buie guilty of possession of a deadly weapon by a prohibited person after hearing evidence that Buie was the registered owner of the vehicle; the firearm was found under the

- 14 -

vehicle's driver's seat, where Buie had been sitting; Buie was the main contributor to the DNA mixture on the firearm; and McTizic-Brown claimed ownership for the firearm for the first time at trial. Under these circumstances, Buie suffered no prejudice from trial counsel's alleged failure to object to evidence regarding Buie's spitting. This claim fails.

### (ii) Cumulative Evidence of Body Camera

Buie argues that when the State offered and published footage from Ajuoga's body worn camera depicting Buie spitting on Ajuoga, the cumulative evidence "only reemphasized the bad act evidence." Brief for appellant at 69. Buie asserts that trial counsel's failure to object to the body camera footage heightened the prejudice suffered by Buie for the admission of his prior bad act.

Because we found above that Buie cannot demonstrate a reasonable probability that but for the evidence of his spitting on Ajuoga, the result of the proceeding would have been different, we likewise find that Buie did not suffer prejudice from trial counsel's alleged failure to object to the admission of Ajuoga's body camera footage. This claim fails.

### (iii) Evidence Related to Marijuana

Buie argues that his trial counsel was ineffective for failing to file a pretrial motion in limine and to make a rule 404(2) objection at trial to the State's evidence pertaining to the marijuana found in the center console of Buie's vehicle and Buie's possession of a marijuana cigarette at the time of his detention.

Rule 404(2) does not apply to evidence of a defendant's other crimes or bad acts if the evidence is inextricably intertwined with the charged crime. See *State v. Burries, supra*. Inextricably intertwined evidence includes evidence that forms part of the factual setting of the crime, or evidence that is so blended or connected to the charged crime that proof of the charged crime will necessarily require proof of the other crimes or bad acts, or if the other crimes or bad acts are necessary for the prosecution to present a coherent picture of the charged crime. *Id*.

Buie was detained because officers observed him to be smoking a marijuana cigarette. Buie's vehicle was also searched at that time due to the odor of marijuana emanating from it. During a search of Buie's vehicle, Ajuoga found marijuana along with a firearm under the driver's seat. Buie was later charged with possession of a deadly weapon by a prohibited person. The marijuana evidence formed part of the factual setting of the crime and was necessary for the prosecution to present a coherent picture of the charged crime. Because the evidence pertaining to marijuana is inextricably intertwined with the charged crime, rule 404(2) did not apply and trial counsel was not deficient for failing to object.

Buie also argues that trial counsel was ineffective for volunteering information that Ajuoga detected an odor of marijuana coming from Buie's vehicle on the day Ajuoga attempted to collect a buccal swab from Buie. Buie contends that there could be no strategic reason to introduce the evidence that in a second encounter with the police, Buie was once again operating a vehicle that smelled of marijuana.

We disagree. Trial counsel's cross-examination of Ajuoga attempted to establish an alternative reason for Buie's agitation and motivation for spitting on Ajuoga. When reviewing claims of alleged ineffective assistance of counsel, trial counsel is afforded due deference to

formulate trial strategy and tactics. See *State v. Kruger*, 320 Neb. 361, 27 N.W.3d 398 (2025). There is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess reasonable strategic decisions. *Id.*

Trial counsel's questioning demonstrated that officers attempted to serve the buccal order on Buie at his workplace. Buie's car was blocked by officers and, because officers again smelled marijuana emanating from his vehicle, Buie was placed in handcuffs in his workplace parking lot at the time of the attempted collection. Trial counsel specifically asked Ajuoga if getting a buccal swab collected at his workplace would be humiliating for Buie, thus providing an explanation for his actions. Though this cross-examination resulted in additional information regarding Buie's alleged marijuana use, it also provided the jury with a reason for Buie's actions other than consciousness of guilt, as suggested by the State. This claim fails.

### (iv) References to Stolen Firearm

Buie argues that trial counsel was ineffective for failing to object to "numerous stolen firearm references" and failed to object to the State's argument in closing related to the status of the firearm as stolen. Brief for appellant at 74.

We find the evidence that the firearm at issue was stolen to be inextricably intertwined with the charged crime. The sole issue at trial was whether Buie was in possession of a deadly weapon on May 26. Evidence regarding whether the firearm was registered and had been in the possession of its registered owner was necessary for the prosecution to present a coherent picture of the charged crime. See *State v. Burries, supra*. This claim fails.

### (d) Eliciting Testimony of Subsequent Search

Buie argues that trial counsel was ineffective for eliciting testimony on cross-examination that Ajuoga searched Buie's vehicle when serving a buccal order due to the observation of the odor of marijuana. Buie asserts that the admission of other, illegal acts evidence presents a special danger of confusion of the issues and undue prejudice.

As we set out above, though Buie's cross-examination of Ajuoga resulted in additional information regarding the odor of marijuana emanating from Buie's vehicle on a second occasion, counsel's questions were designed to show that Buie was agitated because he had been detained and handcuffed by police in his workplace parking lot, which was embarrassing for him, thus providing an explanation for his reaction. An appellate court will not second-guess reasonable strategic decisions. See *State v. Kruger*, *supra*. This claim fails.

### (e) Failing to Argue DNA Was Transferred

Buie argues that his trial counsel was ineffective for failing to adequately argue "the issue of transferred DNA to the firearm found in Buie's vehicle." Brief for appellant at 79. Buie asserts that though trial counsel elicited testimony from Choquette which supported the defense's theory that skin cells from a person could be transferred to the surface of an object without the person ever touching the object, trial counsel failed to then argue at closing that such testimony supported McTizic-Brown's claim that the firearm was his. And while trial counsel did argue that there were two other contributors to the DNA found on the firearm besides Buie, he failed to argue that Buie's items in his vehicle could have transferred his skin cells to the firearm.

During closing arguments, Buie's trial counsel raised the issue of two other unidentified contributors to the DNA found on the firearm, and that Buie's DNA could have been transferred onto the firearm indirectly by virtue of the fact that the firearm was in Buie's vehicle. Though trial counsel did not explicitly reference McTizic-Brown's testimony in its closing argument, we find that trial counsel sufficiently argued that Buie's DNA could have been transferred to the firearm. Further, as the State notes in its brief, that Buie's trial counsel sufficiently made the argument is supported by the fact that the prosecutor felt the need to directly address the argument in his rebuttal closing argument. While the jury ultimately rejected trial counsel's argument that Buie's DNA was indirectly transferred to the firearm, this does not mean that that trial counsel's performance was deficient. See *State v. Sundquist*, 301 Neb. 1006, 921 N.W.2d 131 (2019) (rejecting defendant's argument that trial counsel failed to make "persuasive" arguments because trial counsel did raise issues complained about). This claim fails.

## (f) Cumulative Effect

Finally, Buie argues that if any of the ineffective assistance of counsel claims argued above did not by itself rise to the level of a constitutional violation, the cumulative effect of all the errors demonstrates trial counsel's overall performance was so deficient that it denied Buie the effective assistance of counsel. We have found that all of Buie's claims of ineffective trial counsel fail. Thus, we find that no cumulative effect occurred.

## V. CONCLUSION

For the reasons stated herein, we affirm the conviction and sentence imposed by the district court.

AFFIRMED.